IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JEFFREY LAKE DEVELOPMENT, Incorporated, a Nebraska non-profit corporation, and MIDWAY WILDLIFE & RECREATION CLUB, a Nebraska non-profit corporation, | ) ) ) ) ) ) | 4:11CV3112 |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | FINDINGS AND RECOMMENDATION |
| CENTRAL NEBRASKA PUBLIC POWER & IRRIGATION DISTRICT, a Nebraska public corporation, | ) ) ) ) | |
| Defendant. | ) | |

This matter is before the court on the plaintiffs' motion to remand this case to the District Court of Lincoln County, Nebraska and for attorneys' fees (filing no. 12). For the reasons set forth below, the motion should be granted in part and denied in part.

BACKGROUND

Plaintiffs Jeffrey Lake Development, Inc. ("Jeffrey Lake") and Midway Wildlife & Recreation Club ("Midway") lease property from Central Nebraska Public Power & Irrigation District ("Central"). Central owns and operates the real property at issue in this case pursuant to a license for Hydroelectric Project No. 1417 issued by the Federal Energy Regulatory Commission ("FERC") (the "License"). Under the License granted by FERC, Central must abide by certain terms and conditions, including filing a Land and Shoreline Management Plan (the "Management Plan"). 84 F.E.R.C. ¶ 61079, 61348 (Issued July 20, 1998). The License does not prevent Central from leasing the property to third parties

provided "that the lessee's use of the land is consistent with the [Land and Shoreline Management Plan]." Id.

Pursuant to the License, Central completed the Management Plan which provided a comprehensive strategy for managing the property in question. The Management Plan provides that any property leases in place at the time the Management Plan was implemented are subject to the provisions of the Management Plan and "to federal, state and local regulations." Filing No. 18-2, p. 116-17. Under the terms of the Management Plan, Central was charged with the duty of ensuring its lessees used the property in a manner consistent with the terms of the License; any leasing by Central must bind the lessees to "the terms of FERC-approved plans." Filing No. 18-2, p. 129-30. Central also has the authority to create a "Permit to Construct" approval process for proposed new or replacement structures on the subject property. Filing No. 18-2, p. 118-19.

Pursuant to the terms of the Management Plan, Central adopted Construction and Special Water Access Permitting Procedures for Tenants, Subtenants, and Adjacent Landowners (the "Permitting Procedures"). These Permitting Procedures provide minimum elevation limits on new construction. Filing No. 18-2, p. 183. Additionally, the plaintiffs' respective leases with Central address the elevation issue as it pertains to new construction. Specifically, paragraph 13 of the lease between Jeffery Lake and Central provides:

> All permanent construction of private residence cabins and related structures shall be placed generally above the freeboard contour of the lake which is Elevation 2764.0 feet above sea level . . . . Such structures shall comply with all relevant federal, state and local statutes and regulations in existence . . . .

Filing No. 1, p. 15, ¶ 13.

Similarly, the lease between Midway and Central provides:

> All permanent construction of private residences and cabins and related structures shall be located back of a buffer or clear zone of not less than 30 feet, measured horizontally, and not less than 5 feet, measured vertically, from the normal high water elevations of said lakes. Said normal high water elevations, being above sea level U.S.G.S. datum, are 2635.3 feet on Central Midway Lake and 2635.1 feet on Walker Lake and Glen Young Lake.

Filing No. 1, p. 21, ¶ 13.

Plaintiff Jeffery Lake, on behalf of one of it sublessees, recently asked Central if the provisions in paragraph 13 of its lease with Central included the installment of a septic sewer system; that is, whether Central required the sewer system to be built above the elevation specified in ¶13 of its lease. Filing No. 1, p. 11, ¶9. Central informed Jeffery that the elevation requirement applied to the septic system.[1] Id.

Based on Central's interpretation of the respective leases, the plaintiffs have brought this action seeking a declaratory judgment requiring Central to follow its past conduct and interpretation of the lease provisions, "together with any other applicable rule, policy, or regulation" and allow the disputed structures and improvements to go forward. Filing No. 1, p. 12. The plaintiffs further seek to enjoin Central from "applying and interpreting the lease terms . . . together with any other applicable rule, regulation, or policy" in a manner that allows Central to prevent the construction of "subterranean" or "below grade" improvements due the elevation restrictions in the lease. Id.

---

[1] Plaintiffs state they "are informed and believe" Central is applying a similar interpretation of the elevation limits to the land leased by Midway. Filing No. 1, p. 3, ¶ 10.

This case was originally filed in the District Court of Lincoln County, Nebraska. Defendants timely removed the case to federal court claiming the complaint implicates a federal question. The plaintiffs have moved to remand the case to the Lincoln County District Court.

LEGAL ANALYSIS

**Subject Matter Jurisdiction**

"A defendant may remove a state law claim to federal court when the federal court would have had original jurisdiction if the suit originally had been filed there." Phipps v. F.D.I.C, 417 F.3d 1006, 1010 (8th Cir. 2005)(citing 28 U.S.C. § 1441(b)). See also City of Chicago v. International College of Surgeons, 522 U.S. 156, 163 (1997). Defendants opposing remand to state court bear the burden of establishing that federal subject matter jurisdiction exists over the plaintiff's case. Green v. Ameritrade, Inc., 279 F.3d 590 (8th Cir. 2002). If the defendant proves that any claim within the plaintiffs' complaint supports a finding of federal question jurisdiction, the entire case may be removed to federal court, including any alleged state-law claims arising from the same set of facts. See 28 U.S.C. § 1367; City of Chicago, 522 U.S. at 164; Phipps, 417 F.3d at 1010 (citing Gaming Corp. of Am. v. Dorsey & Whitney, 88 F.3d 536, 543 (8th Cir. 1996)). However, any doubts as to the existence of federal jurisdiction over a removed case must be resolved in favor of remand. Transit Cas. Co. v. Certain Underwriters at Lloyd's of London, 119 F.3d 619, 625 (8th Cir. 1997).

> Removal based on "federal-question jurisdiction is governed by the 'well-pleaded-complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct.

4

2425, 96 L.Ed.2d 318 (1987). Because this well-pleaded complaint rule "makes the plaintiff the master of the claim[, the plaintiff] may avoid federal jurisdiction by exclusive reliance on state law." Id. Defendants are "not permitted to inject a federal question into an otherwise state-law claim and thereby transform the action into one arising under federal law." Gore, 210 F.3d at 948. It is firmly established that a federal defense, including a preemption defense, does not provide a basis for removal, "even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue in the case." Caterpillar, 482 U.S. at 393, 107 S.Ct. 2425.

Central Iowa Power Coop. v. Midwest Independent Transmission System Operator, Inc., 561 F.3d 904, 912 (8th Cir. 2009).

In addition, there is another "longstanding" source of federal jurisdiction where, in certain cases, "federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." Grable & Sons Metal Prods., Inc. v. Darue Engineering and Manufacturing, 545 U.S. 308, 312 (2005). The key question in such cases is whether "a state-law claim necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. at 314.

As explained in Grable:

[I]n certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues. . . . The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues. . . ."

Grable, 545 U.S. at 312.   This category of federal question cases is "special and small." Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 699 (2006).

Thus, federal question jurisdiction arises when the plaintiff's complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Bd. of State of Cal. v. Construction Labors Vacation Trust for So. Cal., 463 U.S. 1, 27-28 (1983).  However, the existence of a "federal issue" does not necessarily vest the court with federal question jurisdiction.   There is no "'single, precise, all-embracing' test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties." Grable, 545 U.S. at 314.   The court may not refuse jurisdiction over a plaintiff's claims "simply because they appeared in state raiment."  Id.  However, " 'federal issue' [is not] . . . a password opening the federal courts to any state action embracing a point of federal law." Id.

    1.    Well Pleaded Complaint Rule

The defendant argues the plaintiffs' complaint raises a federal issue on its face.  By asking the court to not only interpret the language of the lease, but to also interpret "other related or applicable rule[s], regulation[s], or polic[ies]," the defendant asserts the plaintiffs have directly implicated federal law.   The court disagrees.

The parties' dispute over the elevation of septic tank construction stems from the leases between the parties; specifically, whether the defendant has changed its longstanding interpretation of the leases.  Filing No. 1, p. 10, ¶8  Thus, despite its general request for an interpretation of relevant rules, regulations and policies, the heart of the matter is a state law breach of lease issue.  See, e.g., Johnson Lakes Development, Inc. v. Central Nebraska

Public Power & Irr. Dist., 5 Neb.App. 957, 966-67, 568 N.W.2d 573, 581 (1997) (finding a landlord may be estopped "from abandoning a long-standing custom and strictly construing and literally enforcing the terms of the lease")(citing 49 Am.Jur.2d Landlord and Tenant § 325 at 293(1995)).

The defendant argues that all of the possible related rules, regulations and policies, including the leases themselves, are federal law or have been incorporated in federal regulations. Filing No. 18. Thus, under the defendant's reasoning, the plaintiffs' request for an interpretation of those rules creates a substantial issue of federal law for the purposes of subject matter jurisdiction.

The defendants do not cite to any specific section of the FPA, its regulations, or even any specific provisions of the Management Plan governing the interpretation of Central's leases or its alleged breach of the lease terms in light of the historical interpretation of those agreements. Rather, the defendant's argument is as follows:

- The FPA is federal law. Filing No. 18, p. 2.

- Under the FPA, FERC may grant licenses and delegate authority to the licensee to enforce the conditions and terms of land use. Filing No. 18, p. 2.

- Pursuant to the license, the licensee must adopt a Management Plan which is incorporated into the licenses. Filing No. 18, p. 9.

- The Management Plan allows the licensee to adopt permitting procedures, and the permitting procedures are thereby incorporated into the Management Plan. Filing No. 18, p. 16-17.

- Since the federally-approved Management Plan is incorporated into any lease agreements with licensees, the lease agreements between Central and the plaintiffs have the same weight and effect as federal regulations for the

purposes of conferring federal subject matter jurisdiction. Filing No. 18, 16-17.

The defendant has cited no authority holding this type of indirect regulatory authority provides a sufficient basis to invoke federal question subject matter jurisdiction.[2] See Central Iowa Power Coop., 561 F.3d at 919 (noting "indirect regulatory authority in that case was not sufficient to create a federal issue in a case otherwise dependant on state law."); see also Bashaw v. Bank of New York Mellon Corp, Case No. CIV S102869, 2011 WL 2964202 at *2 (E.D. Cal. 2011)(noting it is "unclear how merely invoking the regulations' existence presents a substantial, disputed question of federal law"); Hunter v. Greenwood Trust Co., 856 F.Supp.207, 214 (D.N.J. 1992)(noting a plaintiff's allusion to the federal regulations in anticipation of the defense of preemption does not convert a state law claim to a federal question)

It is true that licensees such as Central have been given the responsibility of ensuring that any use of the lands are "consistent with federal law and policy." Coalition for Fair and Equitable Regulation of Docks on Lake of the Ozarks v. Fed. Energy Regulatory Comm'n, 297 F.3d 771, 778 (8th Cir. 2002). It is also true that the Management Plan requires Central to ensure the terms of the leases contain "provisions making those leases subject to provisions of [the Management Plan] and to federal, state and local regulations" and that the lessees are bound by the provisions of the Management Plan. Filing No. 18-2, p.116-17 &

---

[2] The defendant does cite to VA Timerline, L.L.C. v. Appalacian Power Co., 343 Fed.Appx. 915 (4th Cir. 2009) to indicate "precedent" exists for subject matter jurisdiction in federal district courts in similar situations. While VA Timberline is somewhat factually similar on its face, there is no indication that the issue of subject matter jurisdiction was ever presented to the court or that the court ever addressed the issue sua sponte. Thus, this case does not provide support for the defendant's contention that remand is inappropriate in the instant case.

8

129-30. However, the fact that Central has the responsibility of policing the use of the land and that the plaintiffs have agreed to be bound by the provisions of the Management Plan does not make a dispute over the parties' past conduct under the leases a federal question, particularly when the defendant has not cited to a specific provision of the FPA, its regulations, the License, or the Management Plan which address the specific issues raised by the plaintiffs.

If removal was proper, the defendant should be able to point to specific sections of federal law implicated in the plaintiff's state law claims. See Central Iowa Power Coop., 561 F.3d at 914-15 (noting the party resisting remand must "point to specific elements of . . . [the] state law claims that require proof [that federal law] was violated and explain why that proof is necessary."); see, e.g., McNeil v. Franke, 171 F.3d 561, 564 (8th Cir. 1999)(where success of the claim is dependent on state law, a collateral federal issue will not "transform the issue into a federal case). It has not done so. Instead, the defendant has only argued for a broad application of federal law without addressing the specific elements of the plaintiffs' state law claim for breach of their respective leases.[3]

In short, the defendant has not met its burden of establishing federal subject matter jurisdiction exists. The face of the complaint does not expressly or directly implicate a

---

[3]Indeed, if the plaintiffs' request for an interpretation of the relevant rules, regulations and policies implicates federal law at all, it is best characterized as addressing a defense the plaintiffs anticipated the defendant will raise. Such a claim cannot support removal jurisdiction. Hurt v. Dow Chemical Co., 963 F.2d 1142, 1144 (8th Cir. 1992). See also Farmers Coop. Elevator of Buffalo Center, IA v. Abels, 950 F.Supp. 931, 936 (N.D. Iowa 1996)(noting a federal issue raised by the plaintiff in anticipation of a defendants' responsive pleading, including an argument one or more of the claims are preempted by federal law, does not create grounds for removal).

question of federal law as required for a finding of federal subject matter jurisdiction. Accordingly, the case should be remanded to state court.

    2.    Overriding Federal Interest

This case also does not fall within the small group of cases discussed in Grable which confer federal subject matter jurisdiction based on an overriding federal interest. This is not a case where "a state-law claim necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable, 545 U.S. at 314. The defendant argues the federal government has a strong interest in regulating projects under the FPA and that this case "sensibly" belongs in federal court.

Although Central has a license with the federal government, and that license places conditions on Central's use of the property and permits it to enter into leases consistent with those conditions, the parties' disagreement over the meaning of the terms in Central's leases with the plaintiffs does not create such a substantial federal governmental interest that federal law, rather than state law, must control plaintiffs' requests for relief, which are rooted in a state law claim for breach of a lease. See, e.g., Merrell Dow, 478 U.S. 804, 814 (1986)(holding that although proving a violation of the federal Food, Drug and Cosmetic Act was a necessary element of the plaintiff's state-law tort claim, a federal question was not raised); Miree v. DeKalb County, Ga., 433 U.S. 25 (1977)(finding that the FAA's substantial interest in regulating aircraft travel and promoting air travel safety does not create a federal claim, particularly where there has been no showing that federal operations will be burdened or subjected to uncertainty by variant state-law interpretations or inadequately protected by state law); Dunlap v. G&L Holding Group, Inc., 381 F.3d 1285 (11th Cir. 2004)(holding that although the plaintiff needed to prove ownership of a trademark in accordance with

10

federal law to prove he was fraudulently induced to surrender it, his state law claim did not raise a disputed question of federal law sufficient to confer removal jurisdiction); Jairath v. Dyer, 154 F.3d 1280, 1283 (11th Cir. 1998)(finding removal jurisdiction lacking because proof of a violation of the Americans with Disabilities Act, although a necessary element of the plaintiff's state law discrimination claim, was an insufficiently substantial federal question); City of Huntsville v. City of Madison, 24 F.3d 169, 170 (11th Cir. 1994)(holding that the need to interpret § 13 of the TVA Act does not present a substantial question of federal law that would confer federal question jurisdiction over a removed state contract action); Sarantino v. American Airlines, Inc., Case no. 4:05MD1702, 2005 WL 2406024, *8 (E.D.Mo. 2005)(finding no overriding federal interest in a state law quiet-title action).

    3.    Exclusive Jurisdiction

The defendant argues remand is inappropriate because the FPA provides exclusive jurisdiction to enforce a duty or enjoin a violation of the FPA or Regulations thereunder. 16 U.S.C. § 825p provides:

> The District Courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder. . . . Any suit or action to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder may be brought in any such district or in the district wherein the defendant is an inhabitant . . . .

16 U.S.C. § 825p.

In support of removal jurisdiction, the defendant cites to United States v. Southern California Edison Co., 300 F.Supp.2d 964 (E.D.Cal. 2004). Edison Co., involved a suit by the United States against a FERC licensee for an express breach of its license with FERC, is not applicable to this case. The United States is not a party to this case, the plaintiff is not seeking a judgment based on the FERC license itself, and the plaintiff is not asserting a right to judgment for defendants' alleged violation of specific provisions within the FPA, the License, or the Management Plan.[4]   Accordingly, 16 U.S.C. § 825p in inapplicable to this case.

**Attorneys' Fees**

Pursuant to 28 U.S.C. 1447(c) the plaintiffs seek an award of attorney's fees it incurred in responding to the motion for remand. Such an award is at the court's discretion and attorney's fees should be awarded "only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141

---

[4]   Even if the complaint called for an express interpretation of the FPA, the court is not convinced 16 U.S.C. § 825p would support removal of this case. The plaintiffs are not seeking a finding that Central is somehow currently violating the FPA or its regulations. Rather, the plaintiffs are seeking a finding that nothing in the relevant rules, regulations and policies mandates Central's interpretation of the lease provisions related to subterranean construction. The plaintiffs' argument is not tantamount to asserting Central has violated the FPA, thus 16 U.S.C. § 825p is not controlling. Additionally, ss the defendant correctly notes, there is no complete preemption under the FPA. Federal preemption is generally considered a defense to a particular claim. "As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." Metropolitan Life Ins. Co. v .Taylor, 481 U.S. 58, 63 (1987). See also, Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 4 (1983)(holding that the defense of federal preemption is traditionally not a basis for removal).

(2005). Although the court is granting the request for remand, it does not find the defendant was objectively unreasonable in seeking removal of the case. Accordingly, the plaintiffs' request for attorneys' fees should denied.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. § 636(b), that:

1)   The plaintiffs' motion to remand, (filing no. 12), be granted and the case be remanded to the District Court of Lincoln County, Nebraska.

2)   Plaintiffs' request for attorneys' fees be denied.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

DATED this 23rd day of November, 2011.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.